with 22-3071 Watchouts Enterprises v. Mournes. Counsel for Appellant, if you would make your appearance and proceed, please. Thank you, Your Honor. May it please the Court, my name is Jeff King and I'm Appellant Counsel for Appellants Mark Asagawa, Charles Elstein and Mark Zubas, Bill Mournes and the estate of Gordon Duvall. I would like to reserve three minutes of my time for a rebuttal argument if the Court deems that proper. I will start with what makes this case a little bit unusual for a fraud case on appellate review. There are very few material facts that are at dispute in the fraud case. Watch us in their brief accuse the appellants of hiding the ball on factual issues when actually the ball is in plain sight. But there are only about a half dozen issues or questions of fact on the fraud claims and those are very carefully described in the appellant's briefs. Those disputed facts though, and probably more appropriately, the disputed inferences made by the district court on those facts are dispositive in two points. On the issue of intent and the issue of justifiable reliance, both of which are necessary elements for the two fraud claims. Mr. King, before we get too far into the merits, I need to focus on a potential jurisdictional issue. It has not been briefed and I'm not trying to blindside you, but I nevertheless need to explore this. In the pretrial order, there was a reference to claims against Pacific in count one and count three. I see no indication in the record that those counts were ever resolved by the district court. Specifically, the count one related to the settlement agreement, breach of the settlement agreement, count three related to the duty of good faith and fair dealing. And that would appear to present a jurisdictional problem if all claims against all parties have not been resolved before us now. And so I guess my question to you, and if you're not situated to answer it now, we'll move on and let your argument continue. But I need to drill down and try to understand, are you aware of anywhere where those claims have been resolved? And your honor, my understanding, and I was only counsel in the trial court for a few years, so I don't know where those claims have been resolved. Counsel for WATCHUS may have more knowledge of this specifically than I do. I know default judgment was entered against the corporations because the corporations lacked counsel. And default judgment was entered because of that. I believe default judgment was entered on all of the counts relating to both corporations, Waterfall and Pacific. But your honor, I was not present in the case at that time, so I don't want to swear absolutely that's the case. That's my understanding, and counsel for Appalee may have more knowledge of that than I do. And I'll explore it with counsel for Appalee, too, because that is not my understanding. There was default judgment entered, but it appeared to be entered against Pacific as to WATCHUS' fraud claim, and not these two claims that I'm now specifically talking about. But I won't belabor the point right now, although we're going to have to get to the bottom of this. So please proceed with your merits, or both, please. There was a memorandum in order in which the court said that it was entering default judgment against Pacific for Ferry to have counsel, but there was no judgment entered on that. It was just the memorandum in order, but there was no judgment entered with respect to that. And the judgments are exactly as the Chief Judge just summarized. And I do remember the memorandum in order, and that was what through my memory I'm referencing. If I misspoke unintentionally, I apologize, but that's the extent of the knowledge I have given my involvement in the case. I would be happy to look into that issue further and respond in a 28-J letter if that's appropriate for the court or the court would like that further consideration. If the court is indeed able to meet the merits of the case and we look at the fraud judgments, there's a reason that according to the Seventh Circuit, quote, it is rare for a judge to enter summary judgment in favor of a plaintiff in a fraud case, end quote. The same reason that the Kansas Supreme Court has found that issues of intent specifically are ones that are within purview of the finder of fact, specifically the jury. And that reason is simply with the heavy burden placed upon a district court for making a fraud case. There is another reading of these facts that go contrary to the inferences that we believe were improperly made at the level of the district court. One possible inference that could be read if this case went to a jury is quite simply that appellants believed the facts that they were telling watchers in this case were true. And there's a good deal of evidence presented to the court and presented to the district court supporting that. If you look specifically at Mr. Hasegawa and Epstein, they earned $7,600 from this transaction. They, to earn that funds, had to provide access to potential funders. They provided access to two potential funders besides Waterfall and did not need this involvement with Waterfall to earn any funds. They only got paid if this transaction with Waterfall closed. There was no incentive for them to undertake these actions in question unless they believed that there was a possibility that this deal would actually close. I thought the record was to the effect that they put Waterfall forward as the only partner in this transaction. The agreement they had allowed two things, to find financing through loans and financing through joint ventures. Either of them were acceptable under the agreement that they had with watchers. They provided two potential loan funders and, in fact, went so far, had numerous conversations with watchers about Beale Bank and even had a financing proposal presented from Beale Bank. Waterfall was the only joint venture possibility, but not the only financing possibility. But in terms of the inference of fraud and whether it's viable, it's my understanding that the fraud claim turns in part on the lack of disclosure of the abysmal track record that existed here that Waterfall had. That would be information that your clients would have. I don't see what would be the basis for a reasonable inference that they didn't know that and couldn't have disclosed that. I agree, Your Honor. I'm not arguing, and I apologize if I misled the court unintentionally as such, that they didn't know about the fact that there were previously no successful dealings here. That basis presupposes a duty to disclose on part of the appellants. There was a duty to disclose, I will concede, for Mr. Elfstein and Hasegawa. And that is why they are the only ones named in the fraud by silence claim. There is, as contracting parties, no duty to disclose on the behalf of Moritz, Zuvis, and Duvall these facts that had gone on before. These were two sophisticated entities dealing with each other. They provided all the information about the bonds. They said that the bonds weren't liquid and that the dealings on the bonds needed to be closed before funding would be available. They provided the entire copies of the bonds, showing the limited nature of their interest in the bonds. And so for those three appellants, we don't have the duty to disclose that's underlying that inference. But even if you have a duty to disclose for Elfstein and Hasegawa, there is also a requirement that a showing of an intent to deceive occur. That is a necessary element of the fraud claim that without that showing, a fraud verdict can't stand. And on that, the court made, the district court made an inference, not from the lack of a duty to disclose, but that court made an inference that because there had never been any success in the past, it had to be that they knew there wouldn't be any success in the future and they were deceiving them about the inability to have success in the future. That is necessary to show the intent to deceive that's required for a fraud case. Could a jury conclude there was an intent to deceive from that? Absolutely. I'm not arguing whatsoever that there is insufficient evidence to support a jury verdict of fraud, but we don't have a jury verdict of fraud. We have a verdict of fraud on summary judgment from a district court where all of the inferences are supposed to be in favor of the non-movement and where the court has a burden of showing no doubt that these things are true. And what I'm saying here is there is doubt. There are contrary possible inferences. And that's why fraud cases are meant to go to juries. It's got to be a reasonable inference to overcome summary judgment. It's not like beyond a reasonable doubt standard. So the question is, could any reasonable juror have found that the necessary intent was not present? Do you agree that that's the standard? Your Honor, yes. That is the standard. And if I may answer the question that you posed, I think the answer is yes. Is if the juror reasonably believed that these five individuals believed the bonds would close and believed that that funding would occur, then that, if a jury believes that and that's reasonable, that's not, I'm not sure that's the issue. The question is whether they reasonably, whether the juror could reasonably find that they lacked fraudulent intent in not disclosing the abysmal record of the source of the funds in supplying funds. They had engaged in scores of transactions in which it was supposed to provide the funds and nothing had ever happened. And the question is whether it would be reasonable to believe that their failure to disclose that was not with fraudulent intent. It was innocent. And the fact that they thought it would succeed in the long run, that there would be some success here, is not the issue. That doesn't need to be shown, I don't think. Judge, with respectfully disagreeing, especially as it involves the fraudulent misrepresentation claim and the three waterfall defendants, where no duty to disclose exists. Let's talk about those that you concede there's a duty to disclose. Okay. And I see I have about three minutes left in my time, but of course to answer your question. For those, you have still two remaining issues. You still have the issue of justifiable reliance. Was the reliance on that lack of disclosure proper? And that was argued in district court? Yes. You argued that they didn't have, that it was unreasonable to rely on this? That it was unreasonable to rely on this based on other information that was given? Correct. That was argued in district court, and specifically, I know there is a... Well, we can check the record. You have limited time. Yeah. But in that reliance, given the fact, they got a list of, they asked for a list of references on prior transactions. They were given a list of references that admittedly on its face weren't of prior transactions. They called, WATCHES called those references, found out they weren't from prior transactions. And instead of doing what a sophisticated entity, a juror could reasonably conclude they should do, and following up and say, whoa, these references aren't what you said they were. Give us some references showing that this is true, that you've done deals before. They did nothing. And for a sophisticated business entity in the face of that information to do nothing, there's case law that clearly calls into question of whether that reliance is justifiable, which creates a jury question on that issue. If I may, reserve the rest of my time for rebuttal. You may. Thank you, Your Honor. May it please the Court, Shane Rossman appearing on behalf of the appellee, WATCHES Enterprises. I want to start right there with the justifiable reliance. I'd like you to start with the jurisdictional issue. Okay. I apologize, Your Honor. I'll start with the jurisdictional issue. With regard to the settlement agreement, the claim on the settlement agreement, we would have to elect our remedies. We can't proceed on a fraud claim or on a breach of fiduciary duty claim in a settlement agreement and also elect to force a settlement agreement at the same time. So that's why the settlement agreement claim just kind of went away. Maybe that could have been documented better. I haven't looked back at the judgment because this wasn't briefed. But that's what happened to the settlement agreement claim. Judge Martin entered summary judgment finding that Pacific National Capital breached their fiduciary duties to WATCHES as WATCHES' agent and entered judgment against them for the $182,000 at the summary judgment stage. And that was duplicative of the fraud claim that would have been tried. So the judgment against the Pacific National Capital individuals would be based on the summary judgment that they breached their fiduciary duty. At least that's my belief of how this played out. Moving on to the justifiable reliance. Let me just ask you specifically, as it relates to the two counts, whatever the practical viability of those counts, one way or the other, those claims have to either be dismissed by voluntarily or they have to be adjudicated by the court. And what I'm asking is, and we may need to follow up later, but to your knowledge as you stand there now, is there any piece of paper in the record that shows the dismissal either by the court or voluntarily as it relates to count one and three? As I stand here right now, I cannot point to a place in the record where that was dismissed one way or another. Practically, I told you I believe it practically played out. But no, right now, without that being briefed, I did not look at the record for that. And I can't tell you right now that yes, that's in there. No, it's not. Okay. First, Steve, if it's not there, would there be any impediment to getting that done by the district court? I don't believe so, Your Honor. I don't believe there's any issue regarding those claims. The same damages were found for the breach of fiduciary duty that would relate to the fraud claims. They would be duplicative. We have no intentions of trying to hang Pacific National Capital with punitive damages on that. We didn't argue that at trial and we would have no intentions of doing that now. So I think that those could be summarily dismissed and we would be willing to rely on our breach of fiduciary duty judgment against Pacific that was entered at the summary judgment stage. Moving to the justifiable reliance, Mr. King said that we called the references. We did. What's not in the record is any affidavit showing what they said. He can't point to anywhere in the record where he says that they represented that they weren't prior transactions. Mr. Watch's testimony at trials where they had nothing but glowing things to say about Waterfall. Now, with regard to when the borrower, the investor, your client, when he and maybe his the references that were given, he has an affidavit or said in the deposition that he had glowing references. Yes, he testified to that at trial. That's not in the record, but that's what his testimony was at trial. With regard to the Pacific National Capital individuals, specifically Charles Elston and Mark Hazegawa, Pacific National Capital was Watch's agent. We paid them over $12,000 between the two different agreements to find us funding sources. When you're under Kansas law, when you're someone's agent, that's one of the highest fiduciary duties you can owe. They had to be candid with us. They had to tell us everything that we needed to know, and they didn't do that. They didn't tell us about the three years of consistent failure. They didn't tell us about the scores of promises, as you referenced, Judge Hart, that were breached. They didn't tell us about the 47 projects that they had taken to Waterfall for which they received over $300,000 in funds, and they didn't fund any of them. They didn't tell us any of that. So should they have told us that? Absolutely. And when Judge Martin reviewed this record on summary judgment, he found beyond any reasonable doubt that each one of these appellants committed fraud against Watch's, and then he retired. And then Judge Crabtree is the one that drafted the jury instruction that should have been included in the appendix by the appellants that wasn't, that established facts. And when he re-reviewed this record, he modified some of the findings, and he set forth 295 facts that were deemed established. And they're established based on the appellant's own emails. The vast majority of this record is the appellant's own documents, their own financial statements. Their own documents prove what happened here. And you're right. The question is, can a reasonable juror on this record find anything else other than intent to do fraud or, more importantly, a reckless disregard for the truth? And that's what the summary judgment was entered on. At a minimum, they recklessly disregarded the truth because they knew of this history of failure, and they didn't tell us. Do you have cases where fraud has been established in summary judgment? It is remarkable, and it's very rare in the standard statement in judicial opinions is we don't find that sort of intent at summary judgment. Do you have any authority where this has been done? Can I cite it as I stand here today, Your Honor? No, I haven't prepared to cite that today. But yes, there is authority where fraud has been found on summary judgment in the past. Is it in your brief? I believe I would have cited that in my brief, Your Honor. But it's not uncommon. It's rare. It's not impossible. And in 2016, when the lies are documented in emails, it's possible. So they knew about the track record. They knew that waterfall didn't have any money. There's an email in there from Charles Elston, which says, we hope you're having a better day today. We wish we had the money to help. Sorry, we're a little on the tight side. And then two days later, they asked Watchus to put up a $175,000 refundable deposit because Watchus was the source that was going to fix their financial difficulty. We have emails where they're telling us that they bring in $10 billion a year when the truth is they were millions of debt and never made a dollar. That is in black and white based on their own financial statements in comparison to their emails. These mistruths are documented in black and white. This is not a he said, she said situation. This is a situation where we have documents that show the lies, that show the mistruths, that show the misrepresentations. And you can't argue with what the emails say. And when they had the opportunity to come forward with evidence, they had the opportunity to do it at the summary judgment stage. They filed a few small affidavits. They didn't go get affidavits. They could have filed any affidavits they wanted. They could have, they had the opportunity to cross examine the witnesses that we put forth my deposition. You're talking about trial at this point. No, I'm still talking about summary judgment because summary judgment happened after three years of discovery, after the pre-trial conference order was entered. Then we filed our motion for summary judgment. Watchus took seven depositions of different Pacific clients and Waterfront clients. Mr. King participated in each one of those depositions and had the opportunity to cross-examine each one of those witnesses. Waterfall's in-house lawyer, Gordon Duvall, participated in those depositions and had the opportunity and in fact cross-examined many of those witnesses. They had the opportunity to cross-examine the witnesses we relied on in summary judgment. They had the opportunity to go get affidavits from their other clients where we produced their emails showing, once again, promises of funding, saying that they had a 95 percent success rate when they hadn't closed anything, showing that they've sent documents reflecting multi-million dollar transactions that they were involved in that never closed. This record is replete with evidence showing misstatements that can be proven by their own documents. That's why this is the rare case where summary judgment is appropriate because it's not two people testifying as to a conversation. It's documents. Here's what the email says. There's more to it than proving false statements. The more difficult thing that jurors need to find is the requisite intent. Or the reckless disregard. So it may be totally clear that what they said was false. There still needs to be a finding of intent. Or a reckless disregard for the truth. And I think that that's what we have here is an absolute reckless disregard for the truth. They knew 47 projects hadn't been funded. But they say, WATCHUS is perfect for Waterfall. That they bring in $10 billion a year. That they're closing on more bonds when they've never closed on a single bond. Talk to me about the Rule 56G issue. Neither the rule or the advisory comment says that requires an affirmative statement that you are only making assumptions of these facts or not controverting them for purposes of summary judgment only. And so what basis should we infer from the rule that that in fact is what it intends? There's other opinions that do stand for that proposition. It says that I've cited in my briefing. How else would the court ever know if you're not admitting the fact that you're only not admitting it for the purposes of summary judgment? And their brief doesn't say we're admitting it only for the purposes of summary judgment. It says Pacific does not contest these assertions. Well, but it claims it relies on the local rule stating that it's not that. But it seems to me that that's in a way a red herring. Because when the judge proposed making all these findings, well, when you moved for the court to make those findings, I don't recall and tell me if I'm wrong about this, that the defendants at any point said we didn't admit them in general. We just admitted it for purposes of the summary judgment. Well, they didn't include their response brief in their appendix. It is in their supplemental appendix that they're asking for leave. They did say that, but what they did, they said what they did say that we interpreted this rule to say that this was only going to be for the purposes of summary judgment. But that is completely off base. If you were to look at Federal Rule of Civil Procedure 56E. Did they contest the facts? No. They said we just admitted it for that purpose. Did they then proceed to contest the accuracy of any of those statements? They did not come forward with any additional evidence. And in fact, they had three more opportunities to do that. They had the opportunity when we filed our motion to establish the facts under 56G. They had the opportunity when we filed a motion in limine in front of Judge Crabtree before the jury instruction was crafted, asking Judge Crabtree to not allow them to testify contrary to established facts. And then when the jury instruction conference, when the jury instruction was actually presented, in any one of those instances, they could have came forward with additional facts or evidence. When you requested that they not be allowed to put on any evidence contrary to those established facts, did they indicate they had any evidence contrary to those established facts? No, Your Honor. Let me drill down a little bit just so we're precise on your position on this. At any point, did they come in and say, hey, you're establishing these 256 facts. We agree that facts number 16, 18, 19, 24, blah, blah, blah, are, are, uh, we contest those? Yes, Your Honor. They, they did do that. And the response they said, but all they did is cite back to their summary judgment brief and say, we attempted to controvert these. And we all know that just because you say something's controverted, it doesn't mean it's actually controverted. You have to go look at the evidence. And unfortunately, that's another issue with their appendix, is the evidence isn't here for you to review. They, they've challenged factual findings. You keep protecting their failure to have the appendix, but then you put everything in your appendix, right? Not everything. Virtually everything. I, I put all the evidence that WATCH has relied on in the appendix. I put the jury instruction in the appendix. I did do all of those. So it's available for us to look at. All those items are, my evidence is, the evidence they cited, I didn't put it in their appendix. I did not fix that. Did they put that in those, in the supplemental appendix? It's in the supplemental appendix that they've asked you guys, or the justices here, for leave to file. That is not currently of the record. If you granted that, they would be there, but then they still haven't cited to it. They haven't said that, that on page 732 of my appendix, this is where the, the, affidavit is that proves this is wrong. Or this is where the email is that proves this is wrong. They still haven't cited to the evidence. They're asking both me and this court to sift through the evidence when they shouldn't. Um, I've only got about 13 seconds left. I would like to talk a little bit more about the Rule 56 issue. 56E gives the court options on what to do if someone doesn't controvert a fact. That the court can allow them to, to, um, my time is up. Okay. Um, the court can allow them to come back in and redo it. They can admit it for the purposes of summary judgment. And it doesn't say only for the purposes of summary judgment, or they can issue other appropriate orders. Rule district court Rule 56.1 only tells the court, only tells the jurors what it's going to do under 56E. It's going to admit it for the purposes of summary judgment. Rule 56G gives the court wider latitude that when it enters partial judgment, which is, which is what triggers 56G, then the court can establish facts. So this 56.1 is just a red herring. That's not what it says everywhere. They quote it in their brief. They put only before the quotes, only doesn't appear in that statute or in that local rule. And it's only defining what the court will do under 56E, not under 56G. Thank you, counsel. Thank you, your honors. Very quickly, um, the record, the information on the issue of justifiable reliance about the phone calls made was referenced specifically in page 32 of Apley's brief to where they cite specifically to a number of record sites in the appendix. Actually, the testimony of Mr. Wachus at trial was included in, in the record where he admits to making these calls, but all to one of the individuals. Uh, so that, that is in the record and it is evidence for the court to consider as well in page 34 of their briefing, um, to the point that you made Judge Hartz, even Apley's concede that this evidence supports fraud when viewed in the context of circumstances, but appellants concede it supports fraud for a jury finding when a jury is considering all circumstances and making inferences, but only when this information is considered through inferences in context that are inappropriate on a summary judgment motion for the district court to make. Um, I would be happy to address the rule 56G issues, but I also see that I am out of time and leave that to the court's discretion. Uh, case is submitted.